UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL FLORIO,

       Plaintiff,

v.                             Case No: 2:15-cv-548-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

## ORDER

Plaintiff Michael Florio seeks judicial review of the denial of his claim for Supplemental Security Income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs, and the applicable law. For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.

### I.    Issues on Appeal[1]

Plaintiff raises three issues on appeal: (1) whether substantial evidence supports the determination of the Administrative Law Judge ("ALJ") concerning Plaintiff's Residual Functional Capacity ("RFC") and in doing so whether the ALJ properly evaluated the opinions of Plaintiff's treating physician; (2) whether the ALJ's credibility assessment of Plaintiff is supported by substantial evidence, and (3)

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (holding "a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.")

whether the ALJ's finding that Plaintiff is capable of performing other work that exists in substantial numbers in the national economy is supported by substantial evidence.

## II.   Procedural History and Summary of the ALJ's Decision

On July 8, 2011, Plaintiff filed an application for SSI alleging a disability onset date of November 29, 2010.   Tr. 13, 146-55.   Plaintiff alleged disability due to back and right knee injuries, a fractured toe, attention deficit disorder, anxiety and a mental condition. Tr. 180.   The application was denied initially and upon reconsideration.   Tr. 66, 76.   Plaintiff requested and received a hearing, which was held in Ft. Myers, Florida before ALJ M. Dwight Evans on November 13, 2013.   Tr. 13-23.   Plaintiff was represented by counsel during the hearing; and Plaintiff and a vocational expert ("VE") testified at the hearing.   Tr. 13, 29-65.

On April 18, 2014, the ALJ issued a decision finding Plaintiff not disabled from May 10, 2011 through the date of the decision.   Tr. 13-23.   At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 8, 2011, the application date.   Tr. 15.   At step two, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, low back pain, bilateral knee joint pain, great right toe pain, status post right great toe fracture and anxiety disorder.   *Id.*   At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404,

Subpart P, Appendix 1" *Id.* The ALJ then determined that Plaintiff has the RFC to perform light work[2] with the following exertional and nonexertional limitations:

> [Plaintiff] is able to occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk about 4 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and has unlimited ability to push and pull including operation of hand and/or foot controls. [Plaintiff] can frequently balance with the use of his cane. [Plaintiff] can frequently reach overhead with both arms. [Plaintiff] can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. [Plaintiff] can occasionally stoop and kneel. [Plaintiff] has unlimited ability to handle (gross manipulation), finger (fine manipulation), and feel. [Plaintiff] can tolerate occasional[] exposure to extreme cold, vibration, humidity, proximity to moving, mechanical parts, and working in high, exposed places. [Plaintiff] can tolerate unlimited exposure to extreme heat, wetness, noise intensity, and atmospheric conditions such as fumes, odors, dusts, and gases. [Plaintiff] is able to understand, remember, and carry out simple instructions.

*Id.* at 17 (emphasis in original). Next, the ALJ found Plaintiff is unable to perform any past relevant work as a tile finisher, handy man or carpet cutter/fork lift operator.[3] Tr. 19. Considering Plaintiff's age, education, work experience, RFC,

---

[2] The regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[3] The tile finisher job is classified as skilled work at the very heavy exertional level; however, the VE testified that Plaintiff performed this job at the heavy level. Tr. 56. The handy man job also is classified as skilled work at the medium exertional level; however Plaintiff performed this job at the very heavy level. *Id.* And the combination carpet cutter/fork lift operation job that Plaintiff performed is classified as semi-skilled work at the

and the testimony of the VE, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform and therefore concluded he has not been under a disability from July 8, 2011 through the date of the decision.   Tr. 23.

### III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. §416.920. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631

---

medium exertional level.   Tr. 56-57.   Using the skill level definitions for specific vocational preparation ("SVP") time in 20 C.F.R. §§ 404.1568 and 416.968, skilled work corresponds to an SVP of 5-9, and semi-skilled work corresponds to an SVP of 3-4.   SSR 00–4p, 2000 WL 1898704 at *3.   The tile finisher position has an SVP of 5, the handy man position an SVP of 7 and the carpet cutter/fork lift operator position an SVP of 3-4.   Tr. 56-57.

F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3

(11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Commissioner,* 2015 WL 1453364, at *2 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)).

## IV. Discussion

### a. Whether the RFC is supported by substantial evidence

Plaintiff first argues that the ALJ's RFC determination is erroneous because the ALJ improperly "rejected" the opinions of Plaintiff's treating physician, Kenneth Berdick, M.D., specifically Dr. Berdick's opinion concerning Plaintiff's RFC. Doc. 20 at 4. The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff has the RFC to perform a modified ranged of light work, and the ALJ properly considered Dr. Berdick's opinions and declined to give them controlling weight. Doc. 21 at 6-8. Having reviewed the record and controlling authority, the Court finds substantial evidence supports the ALJ's determination.

The RFC is the most that a claimant can do despite his limitations. *See* 20 C.F.R. § 404.1545(a). At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is required to

assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements.   20 C.F.R. § 404.1545(a).   The claimant's age, education, work experience, and whether she can return to her past relevant work are considered in determining her RFC, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite his impairments.   *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

When determining how much weight to afford a medical opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion.   20 C.F.R. § 404.1527(c)(1)-(6).   Under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2).   Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole.   SSR 96-2p; *Crawford v. Comm'r*, 363 F.3d 1155, 1159-60 (11th Cir. 2004).

Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips*, 357 F.3d at 1240); *Lewis*, 125 F.3d at 1440; *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996). "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel,* 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241). Findings of fact made by state agency medical and psychological consultants as to the nature and severity of a claimant's impairments must be treated as expert opinion evidence of nonexamining sources by the ALJ, but the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner. SSR 96-6p; 20 C.F.R. § 404.1527(d)(1)-(2). Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given to the opinions of other consultants, doctors or medical specialists. 20 C.F.R. § 404.1527(e)(2)(ii); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006).

The opinions at issue were given by Plaintiff's primary care physician, Kenneth Berdick, M.D., on August 9, 2011 and November 12, 2013. Tr. 270, 725-26. The August 2011 opinion was a one-page two-question supplemental mental impairment questionnaire in which Dr. Berdick checked "no" in answer to the question whether Plaintiff suffers from a mental impairment that significantly interferes with daily

functioning.   Tr. 270.   With respect to this opinion, the ALJ accorded the opinion little weight, because Dr. Berdick did not provide any explanation for his opinion, thus it was not supported.   Tr. 21.   In addition, the ALJ noted that Dr. Berdick is Plaintiff's primary care practitioner, and giving an opinion on Plaintiff's mental impairments is "outside of his expertise."   *Id.*   As noted, the ALJ found that Plaintiff's anxiety disorder was a severe impairment at step two of the evaluation process, finding that Plaintiff has moderate difficulties with regard to concentration, persistence or pace, and cannot pay attention for long and needs help following written instructions.   Tr. 15-16.

When considering Plaintiff's mental RFC, the ALJ noted that the record shows Plaintiff was treated conservatively with psychotropic medications prescribed by Dr. Berdick, and he never sought or received treatment from a specialist.   Tr. 20.   The ALJ found that, provided Plaintiff complies with treatment recommendations and takes medication as prescribed, his mental health condition is not disabling such that he cannot work.   *Id.*   The ALJ further explained that Plaintiff's limitations have been accounted for in the RFC, which limits Plaintiff to work in which Plaintiff can understand, remember and carry out simple instructions, representative positions of which have SVPs only of 1 or 2.   Tr. 17, 23.   The Court finds substantial evidence supports the ALJ's decision concerning Plaintiff's mental RFC, and he adequately explained the reasons for discounting Dr. Berdick's opinion concerning Plaintiff's mental impairment, and he had good cause for doing so.   *Winschel*, 631 F.3d at 1179.

The second opinion at issue is another "check-the-box" questionnaire dated November 12, 2013, in which Dr. Berdick opined without any discussion or explanation about Plaintiff's physical capacity to work.  Tr. 725-26.  Dr. Berdick concluded that in an eight-hour workday, Plaintiff could stand/walk only one hour at a time and only two hours total, and sit five hours at one time and 7 hours total; Plaintiff could not do any lifting, pushing or pulling, but he was able to do simple grasping and fine manipulation; Plaintiff could not use his feet for repetitive movements as in operating foot controls nor could he at all bend, squat, crawl or climb; and he could reach above shoulder level.  *Id.*  The ALJ considered this opinion and, noting that Dr. Berdick opined that Plaintiff could not perform even sedentary work, accorded the opinion little weight because it is not supported by or consistent with either the medical records as a whole or Dr. Berdick's own treatment records.  Tr. 21.  In fact, as the ALJ noted, Dr. Berdick's treatment records at the time indicated that Plaintiff was doing very well and ambulating better, and the objective diagnostic testing results also did not support Dr. Berdick's opinion.  *Id.*

After reviewing the record, the Court finds substantial evidence supports the ALJ's decision to reject Dr. Berdick's opinion, as there was good cause to do so because the opinion was inconsistent not only with the record evidence but with the physician's own treatment notes within that time frame.  *Winschel,* 631 F.3d at 1179.  Moreover, as noted by the ALJ and discussed in the Commissioner's brief, the type of form questionnaire or so-called "checklist" opinion that Dr. Berdick used, without providing any explanation or context concerning the reasons for his opinion,

generally is disfavored as it does not provide the ALJ nor the Court with any basis on which to rely upon the opinion.  Tr. 21; Doc. 21 at 9 n.8.  *See Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (physician's use of "questionnaire" format typifies "brief or conclusory" testimony); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (noting "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best"); *Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, *6 (M.D. Fla. Sept. 18, 2009) (stating "courts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions").

Plaintiff's medical records, including treatment notes of Dr. Berdick, also support the ALJ's decision.  In December 2010, Plaintiff sought treatment in the emergency room complaining of pain in his right big toe after a fall.  Tr. 268.  An x-ray revealed a slight fracture of the distal phalanx, and Plaintiff's foot was placed in a postop shoe.  *Id.*  Following this incident, Plaintiff was treated by Dr. Berdick primarily with pain injections and medications; however, as noted by the ALJ, many of the physician's handwritten treatment notes are for the most part illegible.  Tr. 18; *see, e.g.,* Tr. 251-61.  *See also* Tr. 352 (chiropractic notes of Anthony Inglese, with reports from Plaintiff that Dr. Berdick gave him shots in his lower back); Tr. 497 (orthopedic consultation in which Plaintiff stated he received multiple injections to his low back region).

The next legible medical record shows that Plaintiff returned to the emergency room in June 2011, complaining of right knee pain that had been ongoing for a few

weeks.   Tr. 262-63.   During that visit, Plaintiff reported he had not followed up with orthopedics as recommended after his toe fracture and that he was taking medication for his pain, which he said was controlling it.   Tr. 262.   Plaintiff's physical examination showed that he was moving all extremities with no bony deformities, he was neurologically intact and he was diagnosed with right knee pain/sprain.   Tr. 262-63.   Although he was scheduled for an x-ray during the visit, because of the wait time Plaintiff decided instead to take an orthopedic referral and leave.   Tr. 262.

From September to October 2011, treatment records show that Plaintiff began massage therapy, chiropractic treatment and physical therapy to address pain in his right foot, lower back and both knees following his fall in December 2010.   *See generally*, Tr. 284-355.   In addition during that time period, Plaintiff had multiple x-rays and MRIs performed of his lumbar spine, right root and knees.   *Id.*   In general, the results of these diagnostic tests were unremarkable, or in the case of the MRI of his right knee, grossly unremarkable, with some exceptions, showing, for example, possible bone spurs in his right foot (but negative for fracture) and left knee (Tr. 329, 349), a tiny tear of the posterior horn of his medial meniscus of his left knee (Tr. 349), and a possible bone cyst with no fracture and questionable tear versus age-related change in his right knee (Tr. 346-47).   *See also* Tr. 498-99 (summary of diagnostic testing).

As noted by the ALJ, most of Plaintiff's complaints following his fall concerned his right knee, which he reported felt unstable and weak.   Tr. 18.   In October 2011, an arthroscopy of his right knee was performed.   Tr. 356.   An examination by

consultative physician Fatemeh Mousavi, M.D., on October 31, 2011, revealed that Plaintiff appeared to be in "no acute distress;" however, he was using a cane for balance, his gait was abnormal, he had difficulty getting on and off the examination table and arising from a chair and he was limping on his left side.   Tr. 362.   Plaintiff was unable to squat or walk on heels and toes.   *Id.*   The ALJ discussed this opinion, specifically Dr. Mousavi's opinion that Plaintiff needed a cane to keep his balance; and the ALJ accepted the opinion and accounted for Plaintiff's limitation in his RFC. Tr. 19.

In February 2012, Plaintiff returned to Dr. Berdick, who noted Plaintiff's major complaint was chronic low back pain and degenerative joint disease exacerbated by his obesity.   Tr. 376.   On examination, Plaintiff had no joint swelling, a minor para-lumbar muscle spasm, tenderness in his sacroiliac and mild restriction to his lumbar spine flexion.   *Id.*   Rotation and extension were normal, and there were no motor, sensory or reflex abnormalities.   *Id.*   In March 2012, Dr. Berdick noted that post-arthroscopy Plaintiff was ambulating without an assistive device and had only mild restriction to his right knee flexion, no joint swelling, erythema or warmth, and no motor, sensory or reflex abnormalities.   Tr. 374.   Similarly, Plaintiff's May, July and September 2012 examinations by Dr. Berdick showed some sacroiliac tenderness and mild restriction in movement in Plaintiff's lumbar spine, but full range of motion in all other joints; negative straight leg raising bilaterally; and no motor, sensory, or reflex abnormalities.   Tr. 372-73; 568.   Dr. Berdick noted in the September visit that Plaintiff was "relatively stable," had returned for his bimonthly diazepam refill,

was receiving Vicodin from pain management, and told the physician that his "only problem" is that he "needs a job."   Tr. 568.

The ALJ discussed all these and other medical records and concluded:

> Overall, the medical records in evidence reflect the claimant underwent treatment to some degree for his severe impairments. However, the record lacks the type of clinical and laboratory abnormalities one would expect to find of a completely disabled individual and the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. Although the claimant has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms. The claimant participated in numerous therapeutic modalities including physical therapy exercises, massage therapy, and chiropractic therapy. In addition, he underwent pain management services for his back, knee, and toe pain. Treatment records indicate that the claimant had improvement in his symptoms and pain relief with pain injection therapy and prescribed pain medications. He reported 50% or higher overall improvement and improvement with pain medication (Ex. 15F).

Tr. 19.   The ALJ further discussed that Plaintiff's pain management records indicated he was doing well with his regimen; however, Plaintiff was discharged from pain management at some point for poor compliance and behavior.   Moreover, in March 2013 Plaintiff was noted as displaying narcotic-seeking behavior when he no longer had access to pain management services.   Tr. 19-20, 712.   In a visit to the ER for reasons unrelated to the conditions at issue here, Plaintiff was diagnosed with "chronic narcotic use" and was noted to be "very upset at the fact that we would not be prescribing for him additional narcotics."   Tr. 712.

Accordingly, for these reasons, the Court concludes the ALJ's decision is supported by substantial evidence, he applied the proper legal standards, and he

properly discounted Dr. Berdick's form opinion that was inconsistent with the physician's own treatment records.

> ### b. Whether the ALJ's credibility assessment of Plaintiff is supported by substantial evidence

Plaintiff next contends that the ALJ erred in drawing an adverse inference regarding Plaintiff's credibility based on his receiving unemployment benefits in 2011 and 2012.   Tr. 20.   The Commissioner asserts that substantial evidence supports the ALJ's credibility determination.   Doc. 21 at 10.

The regulations require the ALJ to consider specific factors when making credibility determinations.   Those factors include the claimant's daily activities; the location, duration, frequency and intensity of pain and other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medications; treatment other than medication; and any other measures to reduce pain or other symptoms.   20 C.F.R. § 404.1529(c)(3).

SSR 96-7p further explains the process by which a claimant's credibility must be evaluated:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

*Id.*  A claimant's statements as to the intensity and persistence of pain or other symptoms, or how they affect his ability to work, may not be disregarded simply because they are not supported by objective medical evidence; instead, the ALJ must

state specific reasons for his credibility determination and the weight given to subjective statements, which must be supported by the record.   20 C.F.R. § 404.1529(c)(4) (subjective complaints are evaluated in relation to other evidence); SSR 96-7p; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) ("If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.").

Here, the ALJ opined that while he was "persuaded" that Plaintiff's treatment history provided a "reasonable basis" for some of the symptoms he alleged and that Plaintiff's impairments would impose some restrictions on his ability to work, the "totality of his statements regarding his limitations are inconsistent with the objective evidence that does not demonstrate the existence of limitations of such severity as to preclude [Plaintiff] from performing any work on a continuing basis." Tr. 20-21.   The ALJ also discussed Plaintiff's records that he received unemployment benefits in 2011 and 2012, noting that Florida law requires that when a person draws unemployment benefits he is certifying he is ready, willing and able to work.   Tr. 20. The ALJ noted this certification is inconsistent with the allegation that Plaintiff is disabled and unable to work, and thus diminishes his credibility.   *Id.*

The Court finds substantial evidence supports the ALJ's decision.   As noted by the Commissioner, the ALJ based his credibility decision on several factors, only one of which was that Plaintiff was receiving unemployment benefits, such as Plaintiff's narcotic-seeking behavior, as previously discussed; Plaintiff's conservative treatment; Plaintiff's self-reports as late as September 2012 that he was doing well;

and the objective clinical findings of x-rays and MRI reports.   Doc. 21 at 11-12; Tr. 19-20.   Furthermore, with respect to any alleged error in discounting Plaintiff's credibility for receiving unemployment benefits, the authority cited by Plaintiff does not foreclose the ALJ considering this issue among others when looking at the totality of the circumstances, as the ALJ did here.[4]   The Eleventh Circuit and courts in this district repeatedly have held that a claimant's receipt of unemployment benefits properly is considered when determining whether he is capable of working.   *See, e.g.*, *Ricker v. Comm'r of Soc. Sec.*, No. 5:13-cv-479-Oc-18PRL, 2014 WL 6610849, at *10 (M.D. Fla. Nov. 21, 2014) ("Courts in the Eleventh Circuit, in addition to several circuit courts, have found a claimant's receipt of unemployment benefits inconsistent with a claim of disability during the same period.") (citing cases); *see also Butler v. Comm'r of Soc. Sec.*, No. 3:11-cv-110-J-MCR, 2012 WL 628489, at *7 (M.D. Fla. Feb. 27, 2012) ("Plaintiff's allegations of total disability are inconsistent with his receipt of unemployment benefits where he held himself out as being able to work.").   The ALJ therefore could, and properly did, consider Plaintiff's receipt of benefits during the period he claims he was disabled and unable to work as one factor in concluding that his testimony and reports were less than fully credible.

Therefore, upon a review of the full record, the Court finds that substantial evidence supports the ALJ's credibility determination.   "The question is not . . .

---

[4] Plaintiff's reliance on the memorandum of the Chief Administrative Law Judge for the Social Security Administration is unavailing.   Doc. 20 at 8-9.   Although the memo clarifies that "receipt of unemployment does not preclude the receipt of Social Security disability benefits," here as noted, the ALJ did not discredit Plaintiff's subjective complaints solely due to his receipt of unemployment benefits.

whether the ALJ could have reasonably credited [a claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). "A clearly articulated credibility finding with supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562. The Court declines to do so here.

### c. *Whether the ALJ' properly relied on VE testimony to determine that Plaintiff is capable of performing other work that exists in substantial numbers in the national economy*

Plaintiff argues finally that the ALJ committed error in his finding that Plaintiff is capable of performing other work that exists in substantial numbers in the national economy, such as automatic grinding machine operator, design applicator and ampoule sealer. Doc. 20 at 9; Tr. 23. Plaintiff asserts that these positions exceed the RFC determined by the ALJ. Doc. 20 at 10. For example, Plaintiff asserts that the automatic grinding machine operator requires a medium exertional level at a specific vocational preparation ("SVP") level of 3, semi-skilled work at a level above Plaintiff's light exertional level and assessed mental RFC, and that position and the ampoule sealer position each require reasoning levels of 2. *Id.* Plaintiff also argues that the design applicator position requires frequent standing, which exceeds the ALJ's RFC of standing four hours in an eight-hour workday and frequent balancing using an assistive device. Doc. 20 at 10; Tr. 17.

The Commissioner responds that the positions identified by the VE adequately account for Plaintiff's RFC limitation of understanding, remembering and carrying out simple instructions. Doc. 21 at 15; Tr. 17. The Commissioner further argues

that there is no evidence in the record suggesting that Plaintiff is limited in his ability to reason, and no physicians have opined that Plaintiff has such limitations.   *Id.*, citing Tr. 17-21.   Furthermore, a reasoning level of 2 is not inconsistent with the mental RFC here, particularly with respect to the ampoule sealer position, which is "unskilled."   Id. at 15-16.   Moreover, the design applicator position is a sedentary, unskilled position with a reasoning level of only 1, and the Commissioner correctly points out that the VE identified that this job exists in substantial numbers in the national economy.   *Id.* at 16, Tr. 59.   Finally, with respect to Plaintiff's use of a cane, the Commissioner states that Plaintiff misapprehends the ALJ's RFC determination, pointing out that the ALJ did not conclude, as Plaintiff suggests, that Plaintiff requires an assistive device to stand.   Doc. 21 at 16.

With respect to Plaintiff's mental RFC, there is no error.   All three jobs identified by the VE have reasoning levels or SVP time of either 1 or 2[5] (Tr. 59-60), which corresponds to unskilled work.   SSR 00–4p, 2000 WL 1898704 at *3. Unskilled work required "little or no judgment to do simple duties."   20 C.F.R. 416.968(a).   Clearly, these positions do not exceed Plaintiff's mental limitation in the RFC to understand, remember and carry out simple instructions.   Tr. 17.   The case

---

[5] Plaintiff erroneously cited in the record to a completely different position, counter cutter, which has an SVP of 3. Tr. 237, http://www.occupationalinfo.org/69/690685094.html, Doc. 20 at 10. The error most likely was made because the ALJ erroneously identified the automatic grinding machine operator position as Dictionary of Occupational Titles ("DOT") 690.685-094, which is the counter cutter position, instead of 690.685-194. http://www.occupationalinfo.org/69/690685194.html. Thus, Plaintiff incorrectly notes that the automatic grinding machine operation position is semi-skilled with an SVP of 3 (Doc. 20 at 10).   The VE's testimony and the DOT description, however, belie this claim, as this position has an SVP of 2 (Tr. 59), and the VE further testified that her testimony was consistent with the DOT.   Tr. 60; http://www.occupationalinfo.org/69/690685194.html.

of *Marchitto v. Astrue* cited by Plaintiff is inapposite, as there the position at issue had a reasoning level of 3, and the claimant in that case was limited to occupations that would involve only one to two step processes.   2:08-CV-148-FTM-DNF, 2009 WL 804620, at *10 (M.D. Fla. March 27, 2009).

In terms of Plaintiff's physical ability to perform the jobs identified by the VE, the automatic grinding machine operator, design applier and ampoule sealer positions each are classified under the DOT as sedentary jobs.   "Sedentary work" is defined in the regulations at 20 C.F.R. § 404.1567(a) as work which involves:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

*Id.*   As noted, the ALJ found that Plaintiff could stand and/or walk for 4 hours in an 8-hour workday.   Tr. 17.   He also found that with the use of his cane Plaintiff can "frequently balance."   *Id.*   The ALJ presented the VE with a hypothetical including these limitations, and the VE identified the above three positions.   Tr. 58-59.   As noted, the VE also confirmed there were no inconsistencies between her testimony and the DOT.   Tr. 60.   Although Plaintiff appears to contend that the design applicator job requires standing in excess of the RFC determination (Doc. 20 at 10), as noted by the Commissioner, the DOT description of this position identifies it as a sedentary job that requires sitting "most of the time" and may involve walking and standing "for brief periods of time."   *DOT*, 690.686-056, 1991 WL 678634; Doc. 21 at 17 n.13.

Concerning Plaintiff's contention that there is some conflict between the ALJ's RFC with respect to Plaintiff frequently balancing with the use of his cane and the positions identified by the VE, which the Court finds there is not because the ALJ addressed the use of a cane with the VE (Tr. 62), the ALJ confirmed with the VE that her testimony was consistent with the DOT.   Tr. 60.   It was not error for the ALJ to rely on the VE's opinion, and the Court will not remand this case on that basis.   *See Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012).   The ALJ fully complied with his obligation under SSR 00-4p and was not under an independent obligation to identify and resolve any inconsistency aside from any presented by the VE.   Additionally, there was no apparent inconsistency between the DOT and VE testimony.

## V.    Conclusion

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.    The decision of the Commissioner is **AFFIRMED**.

2.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 24th day of January, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:

Counsel of record